IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

GREAT FALLS DIVISION
————————————————

| | | |
|---|---|---|
| PATRICKA POYTHRESS, | ) | |
| Plaintiff, | ) | CV-04-62-GF-CSO |
| vs. | ) | **ORDER AFFIRMING** |
| | | **THE COMMISSIONER'S DECISION** |
| JO ANNE BARNHART, | ) | **DENYING BENEFITS** |
| Commissioner of Social | | |
| Security, | ) | |
| Defendant. | ) | |

————————————————

Plaintiff Patricka Poythress ("Poythress") initiated this action to obtain judicial review of the decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 1381 et seq.

On April 15, 2005, upon the parties' written consent, this case was assigned to the undersigned for all purposes (Court's Doc. No. 8). Now pending before the Court are the parties'

cross-motions for summary judgment (Court's Doc. No. 17
(Plaintiff's Opening Brief treated herein as her Motion for
Summary Judgment) and Court's Doc. No. 18 (Defendant's Motion
for Summary Judgment)).  Having considered the issues presented
by the parties, together with the administrative record, the
Court hereby grants the Commissioner's motion, denies Poythress'
motion and affirms the Commissioner's decision denying SSI.

**I.   *PROCEDURAL BACKGROUND***

Poythress filed an application for SSI on February 28, 2002
(*Tr. at 78-82*).[1]  The Social Security Administration ("SSA")
denied the application initially and on reconsideration (*Tr. at
41-42, 51-54, 57-59*).  After an administrative hearing held on
November 20, 2003, an Administrative Law Judge ("ALJ") found
that Poythress was not disabled within the meaning of the Act
because she could perform a range of sedentary work.  *Tr. at 24-
27*.  The Appeals Council declined to review the ALJ's
determination *(Tr. at 8-11)*, making the determination the
Commissioner's final decision for purposes of judicial review.
20 C.F.R. § 416.1481 (2005).  Jurisdiction vests with this Court
pursuant to 42 U.S.C. § 405(g).

---

[1]Poythress previously filed applications for SSI on May 20, 1996, which the
Social Security Administration ("SSA") denied in an initial determination on
October 23, 1996 (*Tr. at 39, 43-45, 70-72, 88-103*).  She also filed an SSI
application on March 10, 1998, which the SSA denied in an initial determination
on June 11, 1998 (*Tr. at 40, 46-48, 73-77, 104-24*).  Poythress' latest
application for SSI alleges an onset date of June 1, 2000.  Thus, her previous
applications are not relevant to the instant case, and the Court has not
considered them in making its determination herein.

## II.   *STANDARD OF REVIEW*

This Court's review is limited.  The Court may set aside
the Commissioner's decision only where the decision is not
supported by substantial evidence or where the decision is based
on legal error.  Bayliss v. Barnhart, ___ F.3d ___, 2005 WL
2862068 (9th Cir. Nov. 2, 2005), n.1 (citation omitted); Thomas
v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) (citations and
internal quotation marks omitted).  Substantial evidence is
"such relevant evidence as a reasonable mind might accept as
adequate to support a conclusion."  Richardson v. Perales, 402
U.S. 389, 401 (1971); Andrews v. Shalala, 53 F.3d 1035, 1041
(9th Cir. 1995).  Substantial evidence also has been described
as "more than a mere scintilla" but "less than a preponderance."
Sandegathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).  The
District Court must consider the record as a whole, weighing
both the evidence that supports and detracts from the
Commissioner's conclusion.  Green v. Heckler, 803 F.2d 528, 530
(9th Cir. 1986) (citing Jones v. Heckler, 760 F.2d 993, 995 (9th
Cir. 1985)).  The ALJ is responsible for determining
credibility, resolving conflicts in medical testimony, and for
resolving ambiguities.  "Where the evidence is susceptible to
more than one rational interpretation, one of which supports the
ALJ's decision, the ALJ's conclusion must be upheld."  Thomas,
278 F.3d at 954 (citation omitted).

3

## III. *BURDEN OF PROOF*

A claimant is disabled for purposes of the Social Security Act if: (1) the claimant has a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the impairment or impairments are of such severity that, considering the claimant's age, education and work experience, the claimant is not only unable to perform previous work, but the claimant cannot "engage in any other kind of substantial gainful work which exists in the national economy." Schneider v. Commr. of Soc. Sec. Admin., 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382c(a)(3)(A)-(B)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. Corrao v. Shalala, 20 F.3d 943, 946 (9th Cir. 1994) (citing 42 U.S.C. § 1382C(a)(3)).

1. The claimant must first show that he or she is not currently engaged in substantial gainful activity. Id.

2. If not so engaged, the claimant must next show that he or she has a severe impairment. Id.

3. The claimant is conclusively presumed disabled if his or her impairments are equivalent to one on the list of impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.

4. If the claimant does not have a listed impairment, then the claimant must establish a prima facie case of

4

disability by showing an inability to engage in past work because of the medical impairments. <u>Corrao</u>, 20 F.3d at 946.

5.    Upon such a showing, the burden then shifts to the Commissioner to prove that plaintiff can engage in other types of substantial gainful work existing in the national economy given the claimant's age, education, work experience and residual functional capacity. <u>Jones</u>, 760 F.2d at 995.

If the Commissioner finds that a claimant is disabled or not disabled at any point in this process, the review process is terminated. <u>Corrao</u>, 20 F.3d at 946.

## IV.   *<u>DISCUSSION</u>*

From a review of the evidence of record, and after considering the testimony presented at a hearing, the ALJ followed the five-step process for evaluating Poythress' claim. First, the ALJ found that Poythress had not engaged in substantial gainful activity since her alleged onset date of June 1, 2000.[2]  *Tr. at 17, 25 (Finding No. 1)*.

Second, the ALJ found that Poythress has the following severe medically determinable impairments: degenerative joint disease, chronic right shoulder strain, status post mini-open right subacromial decompression and Mumford procedure, and obesity.  *Tr. at 20, 26 (Finding No. 2)*.  The ALJ further found, however, that despite Poythress' history of chronic depression,

---

[2]The ALJ found that Poythress' work from September 2000 until March 1, 2001, was an unsuccessful work attempt in that she worked six months and the job ended due to her alleged impairments.  *Tr. at 17, 25 (Finding No. 1)*.

learning disability in mathematics, and possible attention deficit disorder, those conditions "do not significantly restrict her mental ability to work." *Id*.  Rather, the ALJ found, those conditions only limit her ability to do complex work. *Tr. at 20*.  Also, the ALJ noted that evidence of record showed that Poythress' IQ scores were in the "average to low average range and achievement scores were close to the average range aside from mathematics." *Id*.

Third, the ALJ found that Poythress does not have an impairment, either alone or in combination, that meets or medically equals the criteria for any impairment listed in the Listing of Impairments found at Appendix 1, Subpart P, Regulations No. 4. *Tr. at 20-21, 26 (Finding No. 3)*.  Fourth, the ALJ found that Poythress cannot perform her past relevant work. *Tr. at 21-22, 24, 26 (Finding No. 6)*.

Fifth, the ALJ found that Poythress has the residual functional capacity ("RFC") to perform a range of sedentary work, including both unskilled and semi-skilled jobs to which her skills would transfer. *Tr. at 24-26 (Finding No. 11)*.  He further found that such jobs exist in significant numbers in the regional and national economies. *Id*.

In seeking reversal of the Commissioner's decision, Poythress argues that the ALJ erred by (1) failing to consider the combined effects of her impairments; (2) improperly finding

that her subjective complaints were not fully credible; and (3) applying Medical-Vocational Rule 201.22 as a basis for finding her "not disabled" instead of applying Rule 201.12.  *Pltf's Opening Brief at 7-14*.

In response, the Commissioner argues that substantial evidence supports the ALJ's decision that Poythress was not disabled under the Act, and that the ALJ applied the proper legal standards in reaching that decision.  *Deft's Answer Brief at 2-14*.  The Commissioner argues that the ALJ properly (1) considered all of Poythress' impairments, *id. at 3-5*; (2) evaluated Poythress' credibility, *id. at 5-12*; and (3) relied on vocational expert testimony, instead of the Medical-Vocational Guidelines, in finding the Poythress could perform other work existing in significant numbers in the national economy, *id. at 12-14*.[3]

The primary issues before the Court are whether substantial evidence supports the ALJ's decision, and whether the decision is based on legal error.  For the reasons set forth below, the Court finds that the Commissioner's decision is based on

---

[3]The Commissioner also argues that evidence that Poythress submitted to the Appeals Council after the ALJ's decision does not warrant changing the ultimate conclusion reached in the ALJ's decision.  *Deft's Brief at 14-15*.  Poythress neither raised this issue in her opening brief, nor addressed it in her reply brief.  In any event, having reviewed the record, the Court agrees with the Commissioner that the evidence submitted to the Appeals Council following the ALJ's decision in this case does not warrant changing the ALJ's decision that Poythress is not disabled within the meaning of the Act.

substantial evidence in the record, and is free of legal error.[4]

    **A.**   ***Poythress' Credibility***.

    Poythress argues that the ALJ failed to state sufficient reasons, supported by evidence, to find that she was only "partially credible." *Pltf.'s Opening Brief at 9-12*. She argues that the ALJ failed to state clear and convincing reasons for his credibility determination, and engaged in "over-reading the degree of alleged limitations and using that over-reading as a basis to not believe [her]." *Id*. The Court disagrees.

    When considering a claimant's subjective symptom testimony, an ALJ must perform a two-stage analysis: (1) the <u>Cotton</u> test; and (2) an analysis of the claimant's credibility as to the severity of the symptoms. <u>Smolen v. Chater,</u> 80 F.3d 1273, 1281 (9th Cir. 1996) (referring to <u>Cotton v. Bowen,</u> 799 F.2d 1403 (9th Cir. 1986)). The <u>Cotton</u> test requires only that the claimant (1) produce objective medical evidence of an impairment; and (2) show that the impairment(s) could reasonably be expected to produce some degree of symptom. <u>Smolen</u>, 80 F.3d at 1281-82 (citing <u>Bunnell v. Sullivan</u>, 947 F.2d 341, 344 (9th Cir. 1991) and <u>Cotton</u>, 799 F.2d at 1407-08)); 20 C.F.R. § 416.929 (2005).

    If the <u>Cotton</u> test is satisfied, and there is no evidence of malingering, then the ALJ can reject subjective testimony of

---

[4]The Court addresses the operative issues in a slightly different sequence from how the parties presented them.

the severity of the symptoms only by citing specific, clear and convincing reasons for doing so.  Smolen, 80 F.3d at 1283-84 (citing Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993)). To assess a claimant's credibility, the ALJ may consider ordinary credibility evaluation techniques, unexplained or inadequately explained failure to seek or follow treatment, and the claimant's daily activities.  Id., at 1284; Fair v. Bowen, 885 F.2d 597, 603-604 (9th Cir. 1989).  However, "[g]eneral findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaint."  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).  The ALJ must also consider the factors set forth in SSR 88-13 including:

> A.   The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> B.   Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> C.   Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> D.   Treatment, other than medication, for relief of pain;
>
> E.   Functional restrictions; and
>
> F.   The Claimant's daily activities.

Id. at 727; 20 C.F.R. § 416.929©.

Here, the ALJ found objective medical evidence in the record to support some of Poythress' limitations.  *Tr. at 17-20,*

9

*26*.  He also found that Poythress' impairments could reasonably be expected to produce some degree of symptom.  *Id*.  Moreover, the ALJ did not expressly find that Poythress was malingering. *Id.*  Thus, to reject Poythress' subjective testimony about the severity of her symptoms, the ALJ had to cite specific, clear and convincing reasons.  Smolen, 80 F.3d at 1283-84.  The Court finds that he did.

First, the ALJ noted that Poythress' ability to work for a time after her alleged onset date was inconsistent with her claim of disability.  The ALJ noted that Poythress' treating and examining medical sources released her to return to work within twelve months of her alleged onset date.  *Tr. at 21*.  Even though Poythress stated on August 12, 2002, that her doctor had not released her to work, the ALJ noted, the record shows that she was told not to work only with respect to performing the medium duty work that she had been performing at the time of her injury.  *Id*.  The ALJ noted that Poythress acknowledged that she had been released to light work, and that she actually performed light work during the six months from September 2000 until March 1, 2001.  *Id*.  Thus, the ALJ could properly find that Poythress' actual performance of work was inconsistent with her allegation of total disability.

Second, the ALJ evaluated Poythress' minimal use of pain medication, and found it inconsistent with her allegations of

10

disabling pain.  *Tr. at 22*.  The ALJ noted that, although
Poythress takes one Celebrex tablet per day, one to three
tablets of a muscle relaxer during the day, and a muscle relaxer
at bed time, the only other medication she takes is over-the-
counter Ibuprofen.  *Id*.  He also noted that Poythress reported
no adverse side effects from her use of medication.  The ALJ
determined that this limited use of medication was at odds with
Poythress' allegation of disability, which he was entitled to
conclude.  Reddick, 157 F.3d at 727 (commenting on SSR 88-13).

     Third, the ALJ noted inconsistencies between Poythress'
allegedly disabling conditions, and the objective medical
evidence.  *Tr. at 23*.  He noted that although Poythress
maintains that she suffers from disabling back, neck and knee
problems and that her legs buckle, there is a lack of objective
medical evidence to support those allegations.  *Id*.  The ALJ
noted that the record reflects that Poythress has only mild to
minimal lumbar spine changes, normal neurological findings and a
normal gait.  He further noted that no physician has observed
any problems with Poythress' knees, and there is no evidence of
a medical impairment that would produce the back and knee pain
and numbness of which she complained.  *Id*.  The ALJ was
permitted to note these inconsistencies in evaluating Poythress'
credibility.  Smolen, 80 F.3d at 1283-84 (ALJ may rely on
observations of treating and examining physicians).

Fourth, the ALJ noted several inconsistencies between Poythress' allegedly disabling depression and other evidence of record. *Tr. at 23*. For example, the ALJ noted that Poythress has alleged that (1) her depression is disabling; (2) she cannot leave her home because of her depression; (3) she cannot drive because she forgets where she is driving; (4) and she does not like to be around people. However, the ALJ noted, Poythress "offered no explanation as to how she could go to work from September 2000 until March 1, 2001 if she actually could not remember where she was going, could not leave her house and could not be around people." *Id*.

Further, in discounting Poythress' allegation that her depression is disabling, the ALJ noted that: (1) Poythress admitted that no one recommended psychiatric intervention as might be expected if Poythress were as depressed as she alleged; (2) Poythress acknowledged that she worked with depression before and that she did not cease working because of depression; and (3) nothing in the medical records indicates Poythress has an inability to leave her home or to be around people. Rather, the ALJ noted, evidence exists that Poythress: (1) liked to talk with friends and have family over; (2) got along well with neighbors; (3) went out to appointments; and (4) could drive, handle money, pay bills, do some chores and do her therapy exercises. *Id*. The ALJ was entitled to use ordinary

12

credibility evaluation techniques in his review of the evidence, Smolen, 80 F.3d at 1283-84, and he properly did so here.

Fifth, the ALJ noted inconsistencies with Poythress' allegation that she cannot understand verbal information unless she can read the speaker's lips. *Tr. at 23*. He noted that there exists no objective medical evidence to support Poythress' contention. *Id*. He also rejected the argument of Poythress' counsel that a 1996 diagnosis of an "auditory processing learning disorder" supported the contention. The ALJ noted that the report was outdated, and explained that the contention that the alleged condition was disabling was inconsistent with Poythress' subsequent work with patients in a nursing home and at a group home because she "obviously did communicate with others." *Id*. Further, the ALJ noted that Poythress acknowledged that she ceased working because of her right shoulder injury, not because of her alleged depression or alleged difficulty understanding verbal information. *Id*.

Finally, the ALJ noted that Poythress' various conditions, about which she had been complaining for several years prior to her alleged onset date, did not preclude her from working in the past. *Tr. at 21*. He also noted, as already stated *supra*, that Poythress even worked after her alleged onset date. *Id*. Although he determined that he would consider that effort an unsuccessful work attempt and acknowledged that Poythress'

13

"impairments and pain would preclude her from doing her past work[,]" the ALJ was entitled to consider Poythress' work attempts in addressing her credibility. See, e.g., Gregory v. Bowen, 844 F.2d 664, 666-67 (9ᵗʰ Cir. 1988) (noting significance of evidence that claimant's back impairment had remained constant for some years and that the condition had not prevented her from working during that time).

All of the foregoing observations, which the Court finds to be supported by the evidence of record, indicate that the ALJ, in finding Poythress not fully credible, applied ordinary credibility evaluation techniques, which he was permitted to do. Smolen, at 1283-84 (citing Dodrill v. Shalala, 12 F.3d 915, 918 (9ᵗʰ Cir. 1993)).  The Court cannot supplant its own interpretation of the evidence in place of the ALJ's interpretation.  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citation omitted).  Based upon careful review of the record, the Court concludes that the ALJ provided specific, clear and convincing reasons for his conclusion with respect to Poythress' credibility, based on the required factors.

**B.   *Combined Effects of Poythress' Impairments*.**

Relying on 20 C.F.R. § 416.923, Poythress argues that the ALJ erred in failing to "analyze the effect of one impairment

14

upon another or the interactive effect of all of [her] impairments[]" on her ability to work. *Pltf's Opening Brief at 7-8*. She argues that "it is the combination of impairments and interaction of the impairments that is so disabling for her." *Id*. For example, Poythress argues, although her shoulder injury affects only her right shoulder and only impacts her ability to lift above her shoulder, this condition, "in combination with her chronic depression, learning disability, and back and neck pains becomes much more significant." *Id*. (emphasis omitted). Poythress summarizes her argument as follows:

> Poythress has two significant physical limitations (back and shoulder) that limit her to a subsedentary physical limit. She has two significant mental limitations (depression and learning disability) that limit her ability to function on a day-to-day basis. These four disabilities, in combination, erode Poythress' labor market so significantly that there is no chance that she will be able to obtain or keep any job that exists in significant numbers in the national economy.

*Id. at 9* (emphasis omitted). Thus, Poythress maintains that because the ALJ only evaluated each impairment independently of the others, he erred.

The Court is unpersuaded by Poythress' argument. Poythress correctly notes that, in deciding whether a claimant is eligible for benefits, the Commissioner is required to "consider the combined effect of all the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 423(d)(2)(B); <u>Celaya v.</u>

Halter, 332 F.3d 1177, 1181-82 (9th Cir. 2003) (holding that the
ALJ was responsible for determining the effect of claimant's
obesity upon her other impairments, as well as its effect on her
general health and ability to work, in light of the presence of
her other impairments).  However, application of the law to the
facts of this case does not render the result that Poythress
seeks.

The Court's review of the ALJ's decision, as well as the
entire record, convinces it that the ALJ properly considered all
of Poythress' impairments, together with any combined impact
that they may have on her ability to work.  Also, the Court
concludes that the ALJ offered adequate reasons for his
conclusions.

First, the ALJ thoroughly summarized the medical evidence
of record, including Poythress' mental health history.  *Tr. at
17-20*.  He discussed Poythress' limitations related to her back,
neck, shoulder and knees, as well as to her depression, learning
disability in mathematics and possible attention deficit
disorder.  *Id*.  He also considered Poythress' IQ scores, which
fell into the average to low average range, and achievement
scores, which were close to the average level except for
mathematics.  *Id*.

Second, the ALJ discussed the severity of each impairment.
He concluded, as already noted, that Poythress has severe

16

impairments of degenerative joint disease, chronic right
shoulder strain, status post mini-open right subacromial
decompression and Mumford procedure, and obesity. *Tr. at 20,
26.* He specifically concluded, however, that Poythress'
depression, learning disability in mathematics, and possible
attention deficit disorder "do not significantly restrict her
mental ability to work." *Id. at 20.* Rather, the ALJ found that
those conditions only limit her ability to do complex work, and
he cited the testimony of Dr. Monty Kuka, a medical expert who
testified at Poythress' hearing, in support of this conclusion.
*Id. See also Tr. at 570.*

Third, the ALJ evaluated the evidence and reached a
conclusion with respect to Poythress' RFC. *Tr. at 21-22.* In
doing so, he necessarily considered the impact of Poythress'
medical conditions, both individually and in combination, on her
ability to do work related activities. In response to the ALJ's
question, the VE testified that even if the ALJ found her to be
fully credible with respect to her physical <u>and</u> mental
impairments, his opinion would be that she was not disabled.
*Tr. at 577.* The ALJ discussed and relied on the VE's testimony.
*Tr. at 24-25.*

Also, the ALJ expressly noted in his written decision that
Poythress' treating medical sources released her to work within
twelve months of her alleged injury. *Tr. at 21.* This evidence,

17

coupled with the evidence that Poythress actually returned to
work from September 2000 to March 1, 2001, permitted the ALJ to
infer that Poythress' impairments, even when considered in
combination, did not prevent her from working.  Further,
contrary to Poythress' argument, the ALJ expressly noted that,
in addition to Poythress' physical conditions that produced
pain, her "other conditions never stopped her from working in
the past and would not now render her disabled as supported by
the evidence as a whole including input from the medical
expert."  *Id*.  More than a mere scintilla of evidence exists to
support the ALJ's decision.  Sandegathe v. Chater, 108 F.3d 978,
980 (9th Cir. 1997).  Thus, Poythress' argument fails.[5]

In conclusion, in this Court's opinion, Poythress asks the
Court to reweigh the evidence, and to arrive at a conclusion
different from that of the ALJ.  The Court is not permitted to
do so.  Even in those instances in which "the evidence is

---

[5]Poythress never argues specifically that the ALJ failed to consider her
obesity in combination with her other impairments, as the Ninth Circuit required
of the Commissioner in Celaya, 332 F.3d at 1182.  Even if she had so argued,
however, the Court's conclusion on this issue would be the same for the reasons
already stated.  Further, in Celaya, the Ninth Circuit reasoned that the ALJ
should have considered obesity as a disabling factor for three reasons: (1) it
was raised implicitly in the claimant's report of symptoms; (2) the claimant's
obesity was at least close to the listing criterion, and could exacerbate her
reported illness; and (3) claimant was pro se, and the ALJ should have known to
further develop the record with respect to claimant's obesity.  Id.
    The record in this case makes it distinguishable from Celaya, much the way
the record in Burch v. Barnhart, 400 F.3d 676, 682 (9th Cir. 2005), made it
distinguishable from Celaya.  First, no evidence of record indicates that
Poythress' obesity exacerbates her other impairments, except possibly her back
condition.  Second, Poythress has been represented by counsel throughout the
proceedings.  Third, as already discussed, the ALJ did consider the effects of
all of Poythress' impairments individually and in combination.

18

susceptible to more than one rational interpretation," the Court must uphold the ALJ's interpretation.  <u>Thomas</u>, 278 F.3d at 954 (citation omitted); <u>Sandgathe</u>, 108 F.3d at 980.

   C.   ***Application of the Medical-Vocational Rules***.

   Poythress argues that the ALJ erred for two reasons when he used Rule 201.22 from the Medical-Vocational Guidelines ("Guidelines") in concluding that Poythress is "not disabled." *Pltf's Opening Brief at 12-14*.  First, Poythress argues, the rule is based on a full range of sedentary work, and Poythress is not capable of performing the full range of sedentary work. *Id*.  Second, although the rule applies to claimants who are less than 50 years of age, Poythress argues, her age of 47 "is so close to the next higher bracket" that the ALJ should have considered her to be in the next higher age bracket.  *Id*.  Had the ALJ done so, Poythress argues, he would have applied Rule 201.12, which directs a finding of "disabled."  *Id*.

   The Secretary of Health and Human Services adopted the Guidelines in 1978 to improve the efficiency and uniformity of the decision-making process in determining whether a claimant is disabled.  <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 (9th Cir. 1989); <u>see</u> <u>also</u> 20 C.F.R. Part 404, Subpart P, Appendix 2.

> The Guidelines correlate a claimant's age, education, previous work experience, and residual functional capacity to direct a finding of either disabled or not disabled.

<u>Cooper</u>, 880 F.2d at 1155.

If a claimant suffers only from an exertional impairment,
the ALJ must apply the Guidelines and the Guidelines are
determinative on the issue of disability.  Cooper, 880 F.2d at
1157.  Where a claimant suffers from a nonexertional impairment,
the Guidelines do not apply, and do not resolve the disability
question, which requires reliance on other evidence.  Cooper,
880 F.2d at 1155; 20 C.F.R. Part 404, Subpart P, Appendix 2, §
200.00(e)(1).  Where the Guidelines fail to describe accurately
a claimant's particular limitations, the Commissioner may not
rely on the Guidelines alone to show the availability of jobs
for the claimant.  Jones v. Heckler, 760 F.2d 993, 997 (9th Cir.
1985).  In such a case "the testimony of a vocational expert is
required to identify specific jobs within the claimant's
abilities."  Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir.
1988).  The Guidelines apply "in lieu of taking the testimony of
a vocational expert only when [they] accurately and completely
describe the claimant's abilities and limitations."  Desrosiers
v. Secretary of Health and Human Services, 846 F.2d 573, 577
(9th Cir. 1988) (quoting Jones, 760 F.2d at 998).

When the claimant suffers from both exertional and
nonexertional limitations, as is the case here, the Guidelines
are not controlling unless a finding of disability can be based
on the exertional impairments alone, in which case benefits
should be awarded.  Cooper, 880 F.2d at 1155; 20 C.F.R. Part

404, Subpart P, Appendix 2, § 200.00(e)(2).  If the ALJ cannot find disability based on exertional impairments alone, further evidence and analysis are required.  The ALJ must use the Guidelines as a "framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations."  <u>Id</u>.  "[T]he [Guidelines] serve as a ceiling and the ALJ must examine independently the additional adverse consequences resulting from the nonexertionary impairments."  <u>Cooper</u>, 880 F.2d at 1156.

In the case at hand, the ALJ's written decision clearly shows that he did not use the Guidelines to direct a finding that Poythress is "not disabled."  *Tr. at 24-26*.  Rather, he used the Guidelines only as a framework for his decision, and relied upon the testimony of a vocational expert who testified at Poythress' hearing in reaching his conclusions.  The ALJ expressly stated:

> In this case, medical-vocational rules are not being used to direct a finding due to additional limitations.  However, they have been used as a framework for making a decision in conjunction with the vocational expert's input.  The undersigned notes that ... finding the claimant "not disabled" is supported by evidence from the vocational expert.

Tr. at 25.

Because the ALJ did not rely exclusively on the Guidelines, Poythress' argument fails.  Based on the foregoing authority,

21

the ALJ properly used the Guidelines in conjunction with the testimony of a vocational expert in light of Poythress' nonexertional limitations.  The ALJ did not err.

**V.   *CONCLUSION***

Based on the foregoing, the Court finds that substantial evidence exists in the record to support the ALJ's decision. The Court further finds that the ALJ's decision is not based on legal error.  Therefore,

**IT IS ORDERED** that Defendant's motion for summary judgment (Court's Doc. No. 18) is GRANTED, Plaintiff's motion for summary judgment (Court's Doc. No. 17) (styled "Plaintiff's Opening Brief") is DENIED and the Commissioner's decision denying SSI benefits is AFFIRMED.

The Clerk of Court is directed to enter judgment accordingly.

DONE AND DATED this 17th day of November, 2005.

/s/ Carolyn S. Ostby
Carolyn S. Ostby
United States Magistrate Judge